UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
GHENYA GRANT,

                        Plaintiff,

      - against -

COUNTY OF SUFFOLK, POLICE
OFFICER MATTHEW FRIEDRICH, in his
Individual and Official Capacity, POLICE
OFFICERS "JOHN AND JANE DOES 1-
10," in their Individual and Official
Capacities, POLICE OFFICER ROBERT
MROCZKOWSKI, in his Individual and
Official Capacity, INFINITY DINER,
MANAGER "JOHN DOE" SKALIOTIS, in
his Individual and Official Capacity, and
POLICE OFFICE MICHAEL SWEET, in his
Individual and Official Capacity,

                        Defendants.

-------------------------------------------------------X

**<u>MEMORANDUM AND ORDER</u>**
2:15-cv-4781 (DRH)(GRB)

**APPEARANCES**

**LAW OFFICES OF FREDERICK K. BREWINGTON**
For Plaintiff
556 Peninsula Boulevard
Hempstead, NY 11550
By:    Frederick K. Brewington, Esq.

**SUFFOLK COUNTY DEPARTMENT OF LAW**
For County Defendants
100 Veterans Memorial Highway
PO Box 6100
Hauppauge, NY 11788
By:    Kyle O. Wood, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Ghenya Grant brought this action against Defendants Suffolk County ("County"), Police Officer Matthew Friedrich, in his individual and official capacity, Police Officers "John and Jane Does 1-10," in their Individual and Official Capacities, Police Officer Robert Mroczkowski, in his individual and official capacity, and Police Office Michael Sweet in his individual and official capacity (collectively, "County Defendants"), and Infinity Diner and Manager "John Doe" Skaliotis ("Manager") pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, 2000a, New York State Civil Rights Law § 40, and Suffolk Human Rights Law § 528-8 for racially discriminatory acts.

Presently before the Court is County Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth below, that motion is granted as to first seven causes of action and denied as to the eighth.

## BACKGROUND

The following facts are taken from the parties' submissions, and are undisputed unless noted otherwise.[1]

---

[1] The Court is compelled to comment on the "Plaintiff's Statement of Disputed Facts in Opposition to Defendants' Motion for Summary Judgment Pursuant to Local Rule 56.1 and Counter-Statement of Facts ("Plaintiff's R. 56.1 Statement"). Local Rule 56.1 requires that on a motion for summary judgment, the moving party annex "a separate, short, and concise statement" "of the material facts as to which the moving party contends there is no genuine issue to be tried." The Rule further provides that the opposing party shall include a "correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Plaintiff's counter-statement of material facts contravenes Local Rule 56.1 in several respects. First, as opposed to containing "a short and concise statement of the material facts" as to which they contend there exists a genuine issue to be tried, Plaintiff included a separate section entitled "counter statement of undisputed fact" consisting of over one hundred paragraphs. Moreover, Plaintiff is less than forthright in disputing facts. For example, in at least one instance the statement of disputed facts objects to County Defendants' statement on the basis that the citation does not support the allegation when in fact

Plaintiff is an African American woman, and she claims that she was "denied equal treatment, equal privileges and equal immunities as provided and offered to similarly situated non[-]African American patrons of [Defendant] diner – a place of public accommodation. (Plaintiff's R. 56.1 Stmt. ¶ 5 at 16.)

On August 16, 2014, at about 5:30 p.m., Plaintiff arrived at Defendant Infinity Diner at 663 Rt. 109, West Babylon, NY 11704 to meet a friend for coffee. (*Id.*) As Plaintiff arrived before her friend, she was seated alone. (*Id.* ¶ 6 at 16.) Plaintiff did not like the first table she was taken to, so she requested a booth and was taken to a booth that was not next to a window. (*Id.* ¶¶ 7, 9 at 17.) Seeing that other booths were available she "relocated herself" to a booth by a window. (*Id.* ¶¶ 10–11 at 17.) Thereafter, two managers of Defendant Infinity Diner came over to Plaintiff and asked her to move back to the table. (*Id.* ¶¶ 12–13 at 17.) Plaintiff alleges that the Manager said that "this booth is bigger . . .you can't sit here." (*Id.* at ¶ 14 at 17–18.) Plaintiff replied "the booth looks exactly the same . . . I'd like to continue to sit here." (*Id.*) The Manager then said "you don't know anything about this business and . . . you know this affects my business." (*Id.*) Plaintiff responded "I'm a customer. That's not my problem[.]" (*Id.*) Plaintiff alleges that she then expressed that she would move if the need for space arose. (*Id.* ¶ 17 at 18.)

The Parties dispute whether the booths were the same size. Defendants claim that the third table in question—the booth by the window that Plaintiff selected for herself—was a four-seater booth, and that the original table where she was seated and the booth that she was moved to upon her request were both two-seaters. (Def.'s R. 56.1 Stmt. ¶¶ 44, 57.) Plaintiff claims that the two booths were the same size. (Plaintiff's R. 56.1 Stmt. ¶ 44 at 10.)

---

it does. *See, e.g.*, Plaintiff's Statement at 2, ¶ 3 (disputing that Defendant Friedrich claimed the diner was crowded, when in fact his Affidavit states that "it was crowded.")

A short while later, one of the managers brought a three-person Caucasian family over to the booth Plaintiff had moved to and said, "these people want your booth." (Def.'s R. 56.1 Stmt. ¶ 51; Plaintiff's R. 56.1 Stmt. ¶ 51 at 11). Plaintiff declined to move because there were other open booths. (Plaintiff's R. 56.1 Stmt. ¶ 18 at 18.) The Manager then asked Plaintiff to leave the Diner, which she decline to do. (*Id. ¶¶* 20 – 21 at 19.) At this time the Manager called the Police and said "I have a customer that doesn't want to abide by our rules and I don't want to serve the customer anymore." (*Id.* ¶ 26 at 19.) At some time shortly thereafter, Plaintiff's friend arrived and they tried to order. (*Id.* ¶ 27 at 19.) When the waitress came over, the Manager began to yell and gesture not to serve them. (*Id.* ¶ 28 at 20.) The waitress listened to her boss and walked away from the booth, refusing to serve Plaintiff. (*Id.*)

Shortly thereafter, Defendant Police Officers Friedich, Sweet, and Mroczkowski ("Officers") entered the Diner and approached the table where Plaintiff was seated. (*Id.* ¶ 38 at 22.) The Officers said to her the manager doesn't want you here and you have to leave. (*Id.* ¶ 48 at 22.) Plaintiff asked how it was fair for her to leave, and was told again that she had to leave. (*Id.* ¶¶ 49–50.) Plaintiff said to the Officers that she felt she was being discriminated against by the Diner. (*Id.* ¶ 55 at 23.) The Manager then pointed at the menu and yelled that "we don't have to serve you, it says we only have to serve the people we like," to which the Officers told the Manager to go back to the other side of the restaurant. (*Id.* ¶ 57 at 24.)

Plaintiff then went to leave the restaurant, and on her way out she said to the Manager that this was discrimination. (*Id.* ¶ 63 at 25.) Plaintiff alleges that upon mentioning the color of her skin, that one of the Officers jumped in front of her, stretching out his arms to touch Plaintiff and threatened to arrest her, and then pushed her with his hands toward the door. (*Id.* ¶¶ 64, 65 at 25.) Defendants dispute this, stating that video surveillance from inside the Diner shows that

the Officers did not push, shove, or have any physical contact with Plaintiff. (Def.'s R. 56.1 Stmt. ¶ 13.) As she was leaving, Plaintiff said "you don't want me to talk about discrimination," to which an Officer replied: no, it's because you are making a scene. (Plaintiff's R. 56.1 Stmt. ¶¶ 67–68.) Plaintiff claims that when made her way onto the sidewalk, she asked the Officers if the Diner employees could ask her to leave, even if the reason was the color of her skin, to which two Officers replied in unison in the affirmative. (*Id.* ¶ 72 at 26.) The County Defendants dispute this, saying that they do not recall any conversation outside the Diner with Plaintiff. (Def's R. 56.1 Stmt. ¶ 39.) Later on, Plaintiff filed a complaint against the Officers and was interviewed by a detective and a Lieutenant regarding the incident. (Plaintiff's R. 56.1 Stmt. ¶ 82 et seq. at 27.) At the time of the Complaint, no actions had been taken against the Officers. (*Id.* ¶ 94 at 29.)

County Defendants claim that the Manager asked Plaintiff to leave because she was causing a disturbance. (Def.'s R. 56.1 Stmt. ¶ 1–2.) Plaintiff, on the other hand, contends that the Diner was empty and that they would not allow her to sit at that booth because she was the only African American patron. (*See* Plaintiff's R. 56.1 Stmt. ¶ 16 at 18.) County Defendants also state that only Officer Friedrich spoke with and interacted with Plaintiff, whereas Plaintiff claims that she interacted directly with multiple officers. (*See, e.g.*, Def.'s R. 56.1 Stmt. ¶ 25; Plaintiff's R. 56.1 Stmt. ¶ 72 at 26.)

The Court also notes that in Plaintiff's Rule 56.1 Statement of Disputed Facts, Counsel states that "Plaintiff had been going to the Infinity Diner since she was child [sic], but did not consider herself a regular." (Plaintiff's R. 56.1 Stmt. ¶ 4 at 16.) Plaintiff does not suggest that there have been any other instances in which she was subject to similar conduct at the Diner, nor

that she ever observed similar conduct being perpetrated toward other non-white patrons of the

Diner.

## DISCUSSION

### I. Legal Standard for Summary Judgment

Summary judgment pursuant to Rule 56 is appropriate only where admissible evidence in

the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of

a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See*

*Viola v. Philips Med. SYS. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing

law in each case determines which facts are material; "only disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of summary

judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable

factual issue exists when the moving party demonstrates, on the basis of the pleadings and

submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the

non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn.*

*Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or

other documentation, the non-movant must offer similar materials setting forth specific facts that

show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc*., 85 F.3d 1002,

1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. &*

*Hudson Ry. Co. v. Consol. Rail Corp*., 902 F.2d 174, 178 (2d Cir. 1990) (*quoting Anderson*, 477

U.S. at 252) (internal quotation marks omitted), or "some metaphysical doubt as to the material

facts," *Aslanidis v. U.S. Lines, Inc*., 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986)) (internal quotation marks

omitted), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing Anderson, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

## II.    Plaintiff's Claims

Plaintiff asserts eight claims, seven of which are asserted against all of the County Defendants including the Officers, and one of which is asserted against only Suffolk County. The first count is against all Defendants, individually and collectively, for violations of 42 U.S.C. § 1981 for denying Plaintiff equal treatment, privileges, and immunities in a place of public accommodation as a result of her race/color. (Compl. ¶¶ 61–72.) The second count is against all County Defendants, individually and collectively, for violations of 42 U.S.C. § 1983 for excessive use of force against Plaintiff. (Compl. ¶¶ 72–77.) The third count is a *Monell* claim against Suffolk County for violations of 42 U.S.C. § 1983 for intentionally supporting a

systemic practice, pattern, and custom among its personnel of violating constitutional rights. (Compl. ¶¶ 78–82.)  The fourth count is against all Defendants, individually and collectively, for violations of 42 U.S.C § 1985 for conspiring to deny Plaintiff due process and equal protection under the law based on her race and color.  (Compl. ¶¶ 83–89.)  The fifth count is against all Defendants, individually and collectively, for violations of 42 U.S.C § 1986 for intentionally, negligently, and recklessly breaching their duties to prevent the commission of civil rights violations perpetrated against Plaintiff.  (Compl. ¶¶ 90–101.)  The sixth count is against all Defendants, individually and collectively, for violations of 42 U.S.C. § 2000(a) for wrongful actions, willful neglect, callous indifference, negligent behavior, and violations of state law that prevented Plaintiff from receiving equal accommodations as provided to similarly situated non-African American customers and from engaging in transactions and business on equal terms as similarly situated non-African American customers.  (Compl. ¶¶ 102–107.)  The seventh count is against all Defendants, individually and collectively, for violations of New York State Civil Rights Law § 40 for denying Plaintiff equal access to public accommodations made available to similarly situated non-African American customers.  (Compl. ¶¶ 108–116.)  The eighth and final count is against all Defendants, individually and collectively, for violations of Suffolk County Human Rights Law § 528-8 for denying Plaintiff equal access to public accommodations made available to similarly situated non-African American customers because of the color of her skin, her race, and being of African American decent.  (Compl. ¶¶ 117–123.)  Plaintiff seeks $2 million in damages, $4 million in punitive damages, declaratory judgment, and attorney's fees. (Compl. ¶¶ 123.)

The Court analyzes each of these claims individually below.

### III.    The Motion for Summary Judgment is Granted in Part and Denied in Part

#### A.    *Qualified Immunity*

The Court begins with a discussion of the standard for qualified immunity, as the question of whether the Officers were immune from suit has a bearing on the Federal claims.  As Plaintiff's counsel points out in their Memorandum in Opposition that summary judgment is not appropriate on questions of qualified immunity "when there are facts in dispute that are material to a determination of reasonableness." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).  On the other hand, a defendant is entitled to summary judgment on the basis of qualified immunity when

> [N]o reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs could conclude that it was objectively unreasonable for the defendant[]' to believe that he was acting in a fashion that did not clearly violate an established federally protected right.

*Id.* (quoting *Robinson v. Via*, 821 F.2d 913, 921 (2d Cir. 1987).  Therefore, the Court must look closely at whether there are any facts in dispute here that are material to a determination of the reasonableness of the Officers' actions.

Here, County Defendants claim that they are protected by qualified immunity because "it was not objectionably unreasonable for them to rely upon the request of the manager/owner of the Diner in advising the plaintiff to leave the premises."  (Defs. Mem. in Support [DE 29-12] at 2 (Apr. 10, 2017) (hereinafter "Mem. in Supp.").)  The Second Circuit has established that under federal law, "a police officer is entitled to qualified immunity where '(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act.'"  *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (quoting *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001)); *see also Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U.S. 635 641 (1987). An officer's actions are "objectively reasonable" if there was "arguable" probable cause for his actions. *Jenkins*, 478 F.3d at 87 (quoting *Lennon v. Miller*, 66 F.3d 416, 423–24 (2d Cir. 1995). "Arguable probable cause" has been interpreted to mean that "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* As explained by the Second Circuit, probable cause exists "when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Lennon*, 66 F.3d 416, 424 (2d Cir. 1995).

While qualified immunity is generally applied in the context of an arrest, it also applies here. *See, e.g.*, *Anderson v. Creighton*, 483 U.S. 635, 645 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)) ("*Harlow* clearly expressed the understanding that the general principle of qualified immunity it established would be applied 'across the board.'"). Therefore, the Court must consider whether the Officers' conduct in removing Plaintiff (1) violated clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) whether it was "objectively reasonable" for the Officers to believe that their actions were lawful at the time of the removal. *See Jenkins*, 478 F.3d at 87.

### B. 42 U.S.C. § 1981

42 U.S.C. § 1981 establishes that

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

To state a claim under section 1981, a plaintiff must allege (1) that he is a member of a racial minority; (2) an intent by defendant to discriminate on the basis of race; and (3) that the

discrimination concerned one or more of the activities enumerated in the statute. *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015) (quoting *Milan v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)). Here, there is no dispute over elements 1 and 3—that Plaintiff is a member of a racial minority and that the events in question prevented her from entering into a contract for food services with the Diner. (*See, e.g.*, Compl. ¶¶ 10, 26.) Thus, the only issue is whether Defendants had an intent to discriminate against Plaintiff on the basis of her race. The relevant question here, where the Officers claim qualified immunity, is whether the Officers were objectively reasonably in relying on the Diner's statement that Plaintiff was being disruptive and was being asked to leave on that basis. *Jenkins*, 478 F.3d at 87. However, because this is a summary judgment motion the Court will look at the totality of the circumstances to see if there is any evidence from which a rational trier of fact could infer discrimination and thereby find that the Officers were objectively unreasonable.

Plaintiff claims that the Officers violated her equal rights under the law to contract for food services by removing her from the diner when the request for removal by the Diner employees was based on racial discrimination. (*See* Pl.'s Mem. of Law in Opp. at 10–11.) While both sides agree that Plaintiff brought up the issue of racial discrimination during the events in question, there is no evidence in the record that the Officers or any employee, patron, or representative of the Diner made any explicitly racist statements or that there was any other overt racist conduct. Thus, Plaintiff seeks for the Court to draw an inference of discrimination based on the allegations that similarly situated patrons of a different race were given preferential treatment. For a court to draw such an inference, a plaintiff must show that she and the other patrons "were 'similarly situated in all material respects' to the individuals to whom they compare themselves . . . [and] their circumstances need not be identical, but there should be a

reasonably close resemblance of facts and circumstances." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997); *see also Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).

The question of whether two people are similarly situated is usually a question of fact for the jury. *Lizardo*, 270 F.3d at 101 (citing *Graham*, 230 F.3d at 39). However, the Second Circuit has previously found that this inquiry was appropriate for summary judgment when "plaintiffs have not offered sufficient evidence from which a jury could reach [the] conclusion" that the patrons were similarly situated. *Lizardo*, 270 F.3d at 101. In *Lizardo*, a group of Asian American and African American patrons were escorted out of a restaurant after they accused a restaurant hostess of racism because of their delay being seated. *Id.* The Second Circuit, in affirming the district court's granting of summary judgment to the defendant restaurant, explained that the plaintiffs were not at the top of the waiting list, and that the groups to which plaintiffs compared themselves to were smaller which is "an obviously significant factor in restaurant seating." *Id.*

To aid the court in drawing an inference of discrimination, a plaintiff can also provide circumstantial evidence of race-based animus such as "markedly hostile treatment." However, the Second Circuit has noted there are "many circumstances where markedly hostile treatment, even in a purportedly service-oriented industry, would raise no inference of racial animus, but rather it would simply be yet another example of the decline of civility." *Id.* at 102 (citing *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000). In *Lizardo*, the Second Circuit looked at the alleged instances of hostility in the context of the overall interaction to determine whether they supported an inference of discriminatory intent. 270 F.3d at 102. The

Court found that neither a testy response from restaurant staff on a busy evening nor exasperation at an accusation of discrimination constituted marked hostility. *Id*

In determining whether to grant summary judgment in a Section 1981 claim where, as here, the evidence of discrimination is circumstantial, courts in the Second Circuit have applied the burden-shifting framework established in *McDonnell-Douglas*. *McDonnell-Douglas Corp v. Green*, 411 U.S. 792 (1973); *see also Dennis v. Delta Air Lines, Inc.*, No. 10 CV 973, 2011 WL 4543491 at *5 (E.D.N.Y. Aug 18, 2011); *Stone v. New York Public Library*, No. 05 CV 10896, 2008 WL 1826485 at *3 (S.D.N.Y. Apr. 22, 2008). Under the *McDonnell-Douglas* approach, the plaintiff must first establish a prima facie case of discrimination, which requires presenting "minimal" evidence. *See Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008). At the prima facie stage, the plaintiff must "identify 'circumstances giving rise to an inference of discrimination on the basis' of race." *Dennis*, 2011 WL 4543491 at *5 (quoting *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997)). Once the plaintiff has established a prima facie case, the burden shifts to defendant to "articulate 'some legitimate, non-discriminatory reason' for its action." *Id.* (quoting *McDonnell-Douglas*, 411 U.S. at 802.) If defendant provides such a reason, then "plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the [defendant's] determination was in fact the result of a racial discrimination." *Id.*

In a discrimination case it is incumbent upon the court to examine "the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). As the Second Circuit has stated, whether summary judgment is appropriate in a

discrimination case based on circumstantial evidence "depends upon 'the strength of the plaintiff['s] prima facie case, the probative value of the proof that the [defendant's] explanation is false, and any other evidence' that supports the defendant['s] case." *Lizardo*, 270 F.3d at 103 (quoting *Reeves*, 530 U.S. at 148–49).

Here, even though Plaintiff's prima facie burden is low, Plaintiff does not provide any evidence that would permit a rational trier of fact to infer race-based discrimination to meet element two of the Section 1981 test. The facts here are similar to those in *Lizardo*, insomuch as the other patrons of the Diner were not in parties of the same size. For example, the party that the Diner employees sought to seat at the booth that Plaintiff had selected for herself (the third table in the scenario) was a party of three, whereas Plaintiff at that time was a party of one and she was waiting for her friend which would make her a party of two.[2] (Def.'s R. 56.1 Stmt. ¶ 51; Plaintiff's R. 56.1 Stmt. ¶ 51 at 11; Compl. ¶¶ 21–22.) As the Second Circuit held in *Lizardo*, party size is "an obviously significant factor in restaurant seating." 270 F.3d at 101.

It is significant that when Plaintiff was originally asked to move from the booth by the window she told the Diner employees that if the need to move arose, then she would move. Plaintiff alleges that she then expressed that she would move if the need for space arose. (Plaintiff's R. 56.1 Stmt. ¶ 17 at 18.) When a party of three arrived and the Diner employees

---

[2] While it seems that the difference between a party of two and a party of three is not significant, it is not for the Court to decide how the Diner should conduct its business in preparation for a busy Saturday night. The restaurant has many plausible reasons for seating Plaintiff in a specific area, such as managing customer flow by seating parties alternately in different sections so that a single wait staff person does not become overwhelmed. Moreover, the Diner had no guarantee that Plaintiff's friend would arrive soon or at all; she could very well have ended up being a party of one, or she could hold up a table for an extended period of time waiting for her guest and perhaps the Diner did not want to give her a prime booth for this reason. It is important to note here that the Diner employees originally seated Plaintiff at a small table by the front, and then moved her *at her request* to a larger booth that happened to not be next to the window. (Mem. in Opp. at 2.) Thus, it does not seem that the Diner was completely unaccommodating or that the employees were trying to hide Plaintiff at an undesirable table because of the color of her skin.

asked Plaintiff to move, she refused. (*Id.* ¶ 51 at 11.) Plaintiff claims that this was because there were other booths available, but that was not for her to determine. She had no insight at the time into the intricacies of how the Diner sought to manage its customers. As Plaintiff admits, the Manager told her: "you put me in a real bad situation and I'm not serving you." (Compl. ¶ 35.) Perhaps the Diner employees overreacted, perhaps they were unnecessarily aggressive. However, everything points to the fact that the issues arose from Plaintiff moving between tables and refusing to comply with the Diner employees' requests; not to anything giving rise to an inference of racial discrimination. Finally, and perhaps most importantly, Plaintiff offers no evidence of pretext. In fact, she even admits that she had patroned this Diner on other occasions from the time she was a child. (Plaintiff's R. 56.1 Stmt. ¶ 4 at 16.) The fact that a Diner employee said to Plaintiff that they only serve people they like does not suggest racial animus. (*See id.* ¶¶ 58–59.) As already discussed, Plaintiff had eaten at the Diner before and they were willing to serve Plaintiff until she caused a disturbance in their seating so there is nothing to suggest that the employee meant that the Diner management do not like (and do not serve) black people. Rather, this statement is "yet another example of the decline of civility." *Lizardo*, 270 F.3d at 102.

There is an outstanding dispute over whether the booths were the same size, with Defendants claiming that the booth at issue was a four-seater booth and that the other tables in question were two-seaters, whereas Plaintiff claims that the two booths were the same size. (Def.'s R. 56.1 Stmt. ¶¶ 44, 57; Plaintiff's R. 56.1 Stmt. ¶ 44.) However, the Court does not find that this is a material fact. Even drawing all inferences and resolving all ambiguities in favor of Plaintiff—which means assuming here that the tables were all the same size—the Court does not believe that any rational jury could find in Plaintiff's favor. There are too many perfectly

reasonable and legal bases for the Diner to have wanted Plaintiff to sit in a specific section, for example the distribution of tables among servers, to infer racial discrimination even if the booths were the same size.

All of this discussion is to say that the Officers were reasonable in relying on the information from the Diner employees that Plaintiff was being disruptive and that the Diner employees were asking for her to leave on that basis and not on the basis of racial discrimination. There was "arguable probable" cause because the Officers had reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that Plaintiff was being disruptive and should be removed from the restaurant. *See Lennon*, 66 F.3d at 424; *see also* Testimony of Matthew Friedrich (Nov. 10, 2016) at 30:14 (saying that the Officers received a call about irate customers refusing to leave). Even though Plaintiff was sitting quietly at the moment that the Officers arrived, she immediately engaged with the Officers when they approached her table, expressing that she did not want to leave. (Compl. ¶ 40.) Plaintiff does not need to scream, to "get in [someone's] face," or to cause a scene in order to be disruptive. (Compl. ¶ 47); *see Lizardo*, 270 F.3d at 104.

While Plaintiff states that she told the Officers "it is not fair that they can decide not to serve me because of the color of my skin," there was no reason for Officers to believe that this was the basis for the request for removal as opposed to the fact that she was being disruptive. (Compl. ¶ 42; Def.'s R. 56.1 Stmt. ¶ 5.) Moreover, the Court sees no reason for the Officers to have thought that the Diner employees were being racially discriminatory because a Diner employee, in a moment of anger, said that they only serve people they like. (Plaintiff's R. 56.1 Stmt. ¶¶ 58–59.)

Finally, there is no evidence that the Officers themselves were being racially discriminatory. In fact, the Officers were somewhat sympathetic to Plaintiff and expressed this fairly early in their interaction. For example, when the Officers first approached the table and Plaintiff stated that her having to leave was unfair, one of the Officers responded that it's not fair but that's the way it works. (Plaintiff's R. 56.1 Stmt. ¶ 51; *see also* Compl. ¶ 39) While two of the Officers *may* have foolishly and incorrectly responded "yes" to Plaintiff's question "if they don't like you because of the color of your skin they can decide not to serve you," this does not suggest that the Officers themselves had any racial animus or that they had any reason to believe that they were escorting Plaintiff out because of the color of her skin. (Plaintiff's R. 56.1 Stmt. ¶ 72 at 26.)

Thus, the record is barren of circumstantial evidence of racial discrimination either on the part of the Officers, or on the part of the Diner's employees of which the Officers should have been aware. A smirk, raised voices, and intransigence are all uncivil behavior but do not raise to the level of discrimination without any evidence of racial animus or pretext. As in *Lizardo*, Plaintiff has done little more than cite mistreatment and ask the Court to conclude "that it must have been related to [her] race. This is not sufficient." 270 F.3d at 104 (citing *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998) (the anti-discrimination law "does not make [defendants] liable for doing stupid or even wicked things; it makes them liable for *discriminating*.")). As such, County Defendants are protected on the basis of qualified immunity and their motion for summary judgment as to the first cause of action is granted.

### C. 42 U.S.C. § 1983: All Defendants

42 U.S.C. § 1983 provides that

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

The term "person" is defined to mean "one or more individuals, governments, governmental agencies, political subdivisions," and other types of organizations.[3]  42 U.S.C. § 2000e(a).  Here, Plaintiff asserts a § 1983 claim against Defendants for excessive use of force.

The Second Circuit has held that "in that narrow area . . . [of] the non-seizure, non-prisoner context," individuals possess a Fourteenth Amendment substantive due process right to be free from excessive force employed by government actors acting under the color of governmental authority.  *See Rodriguez v. Phillips*, 66 F.3d 470, 477 (2d Cir. 1995).  Under substantive due process, protections "are available only against egregious conduct which goes beyond 'merely offend[ing] some fastidious squeamishness or private sentimentalism' and can be fair viewed as so 'brutal' and 'offensive to human dignity' as to shock the conscience."  *Smith ex rel. Smith v. Half Hollow Hills Cent. School Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 & n. 6 (2d Cir. 1973) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1972))).  This is a fairly stringent standard.  *See Bogart v. New York*, No. 13-CV-1017, 2016 WL 4939075, at *7 (S.D.N.Y. Sept. 6, 2016).  For example, the Second Circuit has previously affirmed a decision finding that a teacher slapping a student across the face on a single occasion did not violate substantive due process.  *Smith ex rel.*, 298 F.3d at 172.

Here, Plaintiff claims that in response to her comment that she was being discriminated against, Defendant Officer Friedrich "jumped out abruptly in front of Plaintiff with his arms out stretched, touched Plaintiff, and threatened to arrest Plaintiff . . . [and] pushed and placed his

---

[3] These are "labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers."  42 U.S.C. § 2000e(a).

hands out onto Plaintiff's upper body[.]"  (Mem. in Opp. at 6; Plaintiff's R. 56.1 Stmt. ¶¶ 63–68 at 25.)  Plaintiff also claims that the Officers physically pushed her toward the entrance to the Diner.  (Compl. ¶ 44.)  Plaintiff does not allege any injury to her person or her personal property.  Defendants dispute this telling of the facts, and state that there was no actual physical contact and that this is verified by surveillance video.  (Mem. in Supp. at 13.)

On this summary judgment motion, the Court must draw all inferences and resolve all ambiguities in Plaintiff's favor.  Assuming here that the Officers touched Plaintiff and physically pushed her toward the door—which it seems may not have happened—the Court still finds that Plaintiff's substantive due process right has not been violated.  Placing hands on a restaurant patron and pushing this patron toward the door when they are causing a disruption in the dining room and declining to leave, does not shock the conscience.  *See Smith ex rel.*, 298 F.3d at 172.  It is not egregious conduct which rises to the level of being brutal or otherwise so offensive to human dignity as to constitute a violation of substantive due process.  *See id.*  Therefore, County Defendants' motion for summary judgment as to the second cause of action for excessive use of force is granted.

### D.  42 U.S.C. § 1983: Suffolk County

The Supreme Court has held that to "prevail in a Section 1983 claim against a municipality," a plaintiff must establish both a violation of her constitutional rights and that the "the challenged acts were performed pursuant to a municipal policy or custom."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978).  To show that there is a policy, custom, or practice without an express rule or regulation, the plaintiff may show that "the municipality so failed to train its employees, as to display a deliberate indifference to the constitutional rights of those within its jurisdiction."  *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 123 (2d Cir.

1991).  This creates a conjunctive two-part test, which means that Plaintiff must meet both elements to sustain a *Monell* claim.  436 U.S. at 692–94.

Here, Plaintiff alleges that Suffolk County violated her rights by failing to maintain a proper system for investigating incidents on private property, and by failing to adequately train the Officers.  (Compl. ¶ 79; Mem. in Opp. 9–10.)  The absence of a constitutional violation by the Officers, by itself, mandates the dismissal of the claims against the County.  *See City of Canton v. Harris,* 489 U.S. 378, 388 (1989) ("adequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact"); *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986).  Since Plaintiff has not met the first element, we do not need to proceed to the second element of whether there is a policy or custom.  However, based on a review of the record, Plaintiff has failed to offer evidence of a policy or custom by simply pointing to the lack of follow-up on investigating the Officers' behavior and minimal training specifically targeting incidents of racial discrimination in restaurants.  (*See* Compl. ¶ 79; Mem. in Opp. 9–10; Plaintiff's R. 56.1 Stmt. ¶¶ 82–112.)  Therefore, County Defendants' motion for summary judgment as to the *Monell* claim is granted.

E.  *42 U.S.C. § 1985*

Section 1985(3) provides in pertinent part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for

the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

To succeed on a cause of action under § 1985(3), Plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

*Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999); *see also Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586–87 (2d Cir. 1988). "A conspiracy is an agreement between two or more individuals, where one individual acts in furtherance of the objective of the conspiracy, and each member has knowledge of the nature and scope of the agreement." *Dove v. Forham Univ.*, 56 F. Supp. 2d 330, 337 (S.D.N.Y. 1999). Further, "[t]here must be some racial or perhaps otherwise class-based invidiously discriminatory animus behind the conspirator's action." *Griffen v. Breckenridge,* 403 U.S. 88, 102 (1971); *see Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999)*; Gagliardi v. Village of Pawling,* 18 F.3d 188, (2d Cir. 1994).

Here, Plaintiff claims that the Officers worked in tandem with the Diner to remove Plaintiff and her guest, thereby "ensuring that there were no people of color present." (Mem. in Opp. at 21.) Plaintiff also accuses the Officers of frustrating the investigation of Plaintiff's claim of discrimination by failing to interview any of the other patrons or staff present at the Diner. (*Id.* at 22.) Finally, Plaintiff offers as evidence of a conspiracy the fact that the First Precinct is next door to the Diner and that the Officers allegedly regularly frequent it. (*Id.*)

As a preliminary matter, and as already discussed supra, the Court has not found any evidence supporting an inference of race-based discrimination. Therefore, the requirement for racial animus behind the conspirators' actions is not met. In addition, Plaintiff has not provided any evidence of a conspiracy. Ordering lunch at a diner on a semi-regular or even regular basis

does not a conspiracy make. The fact that the Officers had spoken to the Diner employees before does not mean that there was an agreement between them to discriminate against African American restaurant patrons, of which each purported member had knowledge of the nature and scope. *See Dove*, 56 F. Supp. 2d at 337. Therefore, County Defendants' motion to for summary judgment as to the fourth cause of action is granted.

        *F. 42 U.S.C. § 1986*

Section 1986 provides in relevant part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented[.]

It is well-established that a violation of § 1986 is predicated on a violation of § 1985, as the former provides a remedy for a violation of the latter. *See, e.g., Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000) ("[A] § 1986 claim must be predicated on a valid § 1985 claim . . . ."). As Plaintiff has not sustained her burden to show a violation of § 1985, she has no actionable § 1986 claim. Therefore, County Defendants' motion for summary judgment on the § 1986 claim is granted.

        *G. 42 U.S.C. § 2000(a)*

The Second Circuit has previously indicated that § 2000(a) claims are analyzed under the same framework as claims under 42 U.S.C. § 1981. *Stone v. New York Public Library*, No. 05-Cv-10896, 2008 WL 1826486, at *3 (S.D.N.Y. Apr. 22, 2008) (citing *Lizardo*, 270 F.3d at 106.) As explained in the analysis above under § 1981, Plaintiff fails to establish a prima facie case of racial discrimination by the Officers, or by the Diner employees of which the Officers should have been aware. Therefore, for the same reasons that Plaintiff cannot prevail on her § 1981

claim, she cannot prevail under § 2000a.  Accordingly, County Defendants' motion for summary judgment as to the sixth cause of action is granted.

### A.  New York State Civil Rights Law § 40

New York State Civil Rights Law § 40 provides in relevant part:

> No person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any such place shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or directly or indirectly publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color or national origin, or that the patronage or custom thereat, of any person belonging to or purporting to be of any particular race, creed, color or national original  is unwelcome, objectionable or not acceptable, desired or solicited.

In their motion for summary judgment, County Defendants ask the Court to decline jurisdiction over the pendent state law claims if the Court grants summary judgment on all of the federal claims.  (Mem. in Further Support [DE 29-26] at 10–11 (citing *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)).  While the Court may certainly decline to exercise jurisdiction in its discretion, the Court *sua sponte* finds that it need not reach that inquiry as the relevant analysis has already been discuss supra.

It is well established that "[t]he standards governing claims pursuant to section 1981 and the NYHRL [New York Human Rights Law] are identical."  *Perez Riversa v. Hertz Corp.*, 990 F. Supp. 234, 236 (S.D.N.Y. 1997) (citing *Ayton v. Lenox Hill Hosp.*, No. 93 CV 6601, 1997 WL 10000, at *1–2 & n. 1 (S.D.N.Y. Jan. 10, 1997) (citing *Tomka v. Seiler*, 66 F.3d 1295, 1304 n. 4 (2d Cir. 1995))); *see also Drayton v. Toys "R" Us Inc.*, 645 F. Supp. 2d 149, 163–64 (S.D.N.Y. 2009) (citing *Joseph v. New York Yankees Pshp.*, No. 00 CV 2275, 2000 WL 1559019, at *6 (S.D.N.Y. Oct. 19, 2000)); *Martin v. J.C. Penney Corp., Inc.*, 28 F. Supp. 3d 153, 158 (E.D.N.Y. 2014).

As the Court discussed supra under the first cause of action, Plaintiff has not made out even a prima facie case for her Section 1981 claim. There is no evidence from which the Court can infer racial discrimination on the part of the Officers or of which the Officers should have been aware. Since the analysis for a § 1981 claim and a New York Human Rights Law claim are identical, Plaintiff has not made out a prima facie case for this § 40 claim. Therefore, Defendants' motion for summary judgment as to the fifth cause of action is granted.

      *B. Suffolk County Human Rights Law § 528-8*

County Defendants ask the Court to decline to exercise jurisdiction over the Suffolk County Human Rights Law claim, however, this argument seems inapposite given that the Court still has jurisdiction over the claims against non-County Defendants. Given that the County Defendants provide no other legal basis, or any authority, for dismissing this claim the Court denies the motion for summary judgment as to this eighth cause of action.

## CONCLUSION

For the foregoing reasons, County Defendants' motion for summary judgment is granted in part and denied in part. The first through seventh causes of action against Defendants Suffolk County, Police Officer Matthew Friedrich, Police Officers "John and Jane Does 1-10," Police Officer Robert Mroczkowski, and Police Office Michael Sweet are dismissed.

**SO ORDERED.**

Dated: Central Islip, New York
      February 9, 2018

                                        _____/s/_____

                                        Denis R. Hurley
                                        Unites States District Judge